IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAIʻI

| | |
|---|---|
| ROBERT M. HAYSLIP, *on behalf of himself and other similarly situated individuals*,<br><br>Plaintiff,<br><br>v.<br><br>CITY AND COUNTY OF HONOLULU,<br><br>Defendant. | Case No. 22-cv-00410-DKW-WRP<br><br>**ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR CONDITIONAL CERTIFICATION OF COLLECTIVE ACTION UNDER THE FLSA** |

Plaintiff Robert Hayslip moves for conditional certification of a collective action comprised of emergency medical technicians and paramedics employed by Defendant City & County of Honolulu (Honolulu), alleging that Honolulu has failed to properly calculate this group's "regular rate" of pay or pay overtime as required by the Fair Labor Standards Act (FLSA). At the instant "preliminary" stage of the litigation, as both parties acknowledge, the standard for certifying such a collective action under the FLSA is less than demanding. And, here, Hayslip has met this less than demanding standard. Specifically, Hayslip has alleged that the above-mentioned group is sufficiently "similarly situated" with respect to the FLSA claims at issue. Therefore, the motion for conditional certification, Dkt. No. 26, is GRANTED to that extent. Hayslip also moves for approval of a notice

to be sent to potential members of the now conditionally certified collective action. Honolulu, however, has submitted an opposing proposed notice. As more fully explained below, the Court orders the parties to meet-and-confer on the same with the goal of submitting a *joint* proposed notice to the extent possible.

## BACKGROUND

On September 14, 2022, Hayslip initiated this lawsuit with the filing of a Complaint. Dkt. No. 1. Therein, Hayslip alleges that Honolulu has or currently employs approximately 300 active or retired paramedics and emergency medical technicians (or EMTs). *Id*. at ¶¶ 7-9. Hayslip further alleges that Honolulu has failed to (1) properly calculate these workers' "regular rate" of pay by not including "all required compensation" in the calculation, (2) pay these workers for work that qualifies as "overtime" under the FLSA, and (3) timely pay these workers "overtime" under the FLSA. *Id*. at ¶¶ 16-17, 19. Hayslip also alleges that the failure to pay overtime under the FLSA was due to "human and mechanical error through the use of multiple systems to track time." *Id*. at ¶¶ 18, 22.

On February 8, 2023, Hayslip filed the pending motion to conditionally certify a collective action under the FLSA and for approval of notice ("motion"). Dkt. No. 26. Hayslip asks for conditional certification of the following group:

"individuals who (1) are or were eligible for FLSA overtime by virtue of employment in the City and County of Honolulu's Department of Emergency Services as Emergency Medical Technicians and/or Paramedics and (2) were under and/or uncompensated for their FLSA overtime." *Id*. at 2.  Hayslip argues that conditional certification is appropriate because the group is or was employed by Honolulu, employed under the same terms and conditions of a collective bargaining agreement, and "uniformly subjected to the same policies and methodologies" with respect to overtime payments. *Id*. at 8.  Accompanying the motion is a declaration from Hayslip.  Among other things, Hayslip asserts that Honolulu's EMTs and paramedics are represented by the United Public Workers American Federation of State, County & Municipal Employees Local 646, and whose employment is subject to a collective bargaining agreement between said Union and Honolulu (CBA).  Decl. of Robert Hayslip at ¶¶ 3-4, Dkt. No. 26-2. Hayslip further asserts that overtime pay is governed by the CBA, which requires the inclusion of "monthly pay differentials" in the rate of pay.  *Id*. at ¶¶ 6-9.  Also attached to the motion is Hayslip's proposed notice to potential members of the collective action.  Dkt. No. 26-3.

On April 6, 2023, Honolulu filed an opposition to the motion.  Dkt. No. 32. On the merits of the motion, Honolulu principally argues that Hayslip has failed to

3

show how the potential members of the collective action are "similarly situated" for purposes of the FLSA claims. *Id*. at 8-12. Honolulu also opposes Hayslip's proposed form of notice, contending that it is "one-sided" and omits important information. *Id*. at 8, 13-16. Honolulu, thus, attaches its own proposed notice, in the event conditional certification is granted. *Id*. at 16 (citing Dkt. No. 32-1). On April 13, 2023, Hayslip filed a reply in support of the motion. Dkt. No. 33.

With briefing complete, this Order now follows.[1]

## **APPLICABLE LEGAL PRINCIPLES**

Under the FLSA, "workers may litigate jointly if they (1) claim a violation of the FLSA, (2) are 'similarly situated,' and (3) affirmatively opt in to the joint litigation, in writing." *Campbell v. City of Los Angeles*, 903 F.3d 1090, 1100 (9th Cir. 2018) (quoting 29 U.S.C. § 216(b)). Here, at least for purposes of conditional certification, Honolulu does not challenge the presence of the first and last of the above-mentioned requirements. Instead, Honolulu challenges only the second requirement: whether the workers here are similarly situated. *See generally* Dkt. No. 32. The Court, thus, addresses only that requirement further herein.

Although the FLSA contains no definition of "similarly situated" workers, the Ninth Circuit Court of Appeals has explained that, in this context, "similarly

---

[1] On April 18, 2023, pursuant to Local Rule 7.1(c), the Court elected to decide the motion without a hearing. Dkt. No. 34.

situated" workers are those that "share a similar issue of law or fact material to the disposition of their FLSA claims." *Campbell*, 903 F.3d at 1117. At the present stage of this litigation, *i.e.*, the conditional or preliminary certification stage, a district court's review of whether workers are similarly situated "typically focus[es] on a review of the pleadings but may sometimes be supplemented by declarations or limited other evidence." *Id*. at 1109. Notably, the "level of consideration is lenient—sometimes articulated as requiring substantial allegations, sometimes as turning on a reasonable basis, but in any event loosely akin to a plausibility standard, commensurate with the stage of the proceedings." *Id*. (quotations and citations omitted).

Ultimately, preliminary certification "is an area of substantial district court discretion." *Id*. at 1110 n.10.

## **DISCUSSION**

With the foregoing principles in mind, and for the reasons set forth below, the Court finds Hayslip has sufficiently alleged that the employees covered by his proposed collective action are similarly situated.

First, contrary to Honolulu's arguments, at least with respect to the payment of overtime, Hayslip has alleged, albeit loosely, how the proposed collective is similarly situated. Specifically, Hayslip alleges that Honolulu has failed to pay

overtime to these workers as a result of "human and mechanical error through the use of multiple systems to track time." While this allegation may not ring with specifics, it is more than simply a "conclusory" allegation, as Honolulu contends. Rather, it identifies a method allegedly common to all of the workers of how they were not paid overtime properly. Based upon the Court's review of *Campbell*, as well as the cases to which even Honolulu cites, which Honolulu characterizes as requiring conduct "across the board" for a group of workers, Hayslip's allegation suffices, if only for purposes of the instant analysis. *See* Dkt. No. 32 at 10 (citing cases); *Campbell*, 903 F.3d at 1119 (involving an allegedly unwritten, Department-wide policy).[2]

Second, the Court agrees that Hayslip's allegations concerning the "regular rate" calculation struggle to satisfy a similarity standard. Principally, this is because, in the Complaint, Hayslip does not allege *how* the "regular rate" was improperly calculated. Instead, Hayslip merely alleges that Honolulu has "failed to include all required compensation" when calculating the rate. Compl. at ¶ 16.

---

[2] Honolulu also argues that Hayslip has failed to allege *when* he failed to receive overtime pay or *when* Honolulu failed to properly calculate the regular rate. Dkt. No. 32 at 11. However, Honolulu cites no case, or any logical principle, as to why *when* it allegedly violated the FLSA matters as to whether the proposed collective action is similarly situated. Other than with respect to a statute of limitations argument, which is not the issue here, the *timing* of Honolulu's alleged violations would appear to have no relevance provided that the *reason* for the violations is similar as to all workers.

Such an allegation fails to explain what "required compensation" was not included, why it was not included, or if this failure was the result of a problem common to all workers. Nonetheless, in Hayslip's declaration, he adds that EMTs and paramedics work pursuant to a CBA, which requires the inclusion of "pay differentials" in the rate of pay, and Honolulu has failed to properly calculate these workers' "regular rate." While Hayslip's declaration does not expressly connect the foregoing statements,[3] at this preliminary juncture of the proceedings, and in light of the context of the overall allegations and alleged similarity of Hayslip's other claims (as discussed above), the Court finds that it is an appropriate use of its discretion to allow conditional certification of a collective action.[4]

Specifically, the Court conditionally certifies the following collective action: individuals who work or worked for the City & County of Honolulu's Department of Emergency Services as an emergency medical technician or paramedic at any time on or after **September 14, 2019**, and are or were a member of the collective bargaining unit with United Public Workers American Federation of State, County & Municipal Employees Local 646.[5]

---

[3] In other words, Hayslip does not expressly state that Honolulu has failed to properly calculate the "regular rate" because "pay differentials" have not been included in said calculation.
[4] Put another way, the deficiencies with respect to similarity in the "regular rate" claim are not reason enough to prevent the mailing of notice to potential members of this action.
[5] In its opposition, Honolulu requests that the definition of the collective action include reference to the collective bargaining unit mentioned in Hayslip's declaration. Dkt. No. 32 at 12.

The parties raise certain disputes with their respective definitions of the collective action. First, the Court agrees with Honolulu that the earliest possible date for individuals to have worked is September *14*, 2019, given that is the date three *years* prior to the filing of the Complaint. *See* 29 U.S.C. § 255(a) (providing for a three-year statute of limitations with respect to *willful* violations of the FLSA); *but see id*. § 256(b) (explaining that an opt-in plaintiff's claim does not commence until the date on which his or her written consent is filed with the court). Moreover, Hayslip provides no explanation for why his proposed date, September *1*, 2019, is appropriate, given that it is unmoored from any logical or apparent event in this case. Second, the Court disagrees with Honolulu's suggestion that workers should "believe" their overtime was improperly calculated. Put simply, the whole point of the instant process is to determine whether workers, other than allegedly Hayslip, received improper pay under the FLSA. It is, thus, premature for any worker to believe or know whether they were undercompensated. It is simply enough, at this stage, for the worker to be a member of the group defined above.

This leaves the proposed notice to potential members of the collective action. *See Campbell*, 903 F.3d at 1109 ("A grant of preliminary certification

---

Because Hayslip does not address, let alone oppose, this suggestion in his reply, *see generally* Dkt. No. 33, the Court includes the same in the definition.

results in the dissemination of a court-approved notice to the putative collective action members, advising them that they must affirmatively opt in to participate in the litigation."). The purpose of such notice is to ensure that individuals receive "accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether to participate." *Hoffman-La Roche Inc. v. Sperling*, 493 U.S. 165, 170 (1989).[6] The notice must "avoid even the appearance of judicial endorsement of the merits of the action." *Id*. at 174.

With these principles in mind, the parties are ORDERED to meet-and-confer to discuss the content of the proposed notice, the length of the opt-in period, and the deadline for Honolulu to provide the contact information both sides agree should be provided. *See Fernandez v. Bank of Am., N.A.*, 2019 WL 3059150, at *4 (C.D. Cal. Mar. 8, 2019) (same). The parties will have fourteen (14) days from entry of this Order, *i.e.*, until May 12, 2023, to submit a joint notice upon which they can agree. If the parties are unable to reach agreement on any specific language or part of the proposed notice, they may submit, also by May 12, 2023,

---

[6] For example, in the Ninth Circuit, courts "commonly" notify opt-in members of their potential obligations in a case such as this should they join. *See, e.g.*, *Hanigan v. OpSec Sec., Inc.*, 2022 WL 4465518, at *4 (D. Idaho Sep. 26, 2022) (citing cases). Further, it is appropriate to notify potential members that, should they not opt-in, their FLSA claims *may* be time-barred. *See* 29 U.S.C. § 256(b) (explaining that an opt-in plaintiff's claim does not commence until the date on which his or her written consent is filed with the court); *Baylor v. Homefix Custom Remodeling Corp.*, Case No. 19-cv-1195 (D. Md.), Dkt. No. 43 at 3 ("However, if you do not timely file to opt in, your FLSA claim could be time-barred, that is, it may be too late for you to file a claim.").

the portion of the notice on which they can agree, together with a joint statement setting forth the nature of their dispute on the portions on which they cannot.

## CONCLUSION

For the reasons set forth above, the motion for conditional certification of collective action, Dkt. No. 26, is GRANTED IN PART to the extent that a collective action is conditionally certified, as defined herein.  The parties are ORDERED to meet-and-confer, and to provide the Court with the product of their discussions, as described above, by May 12, 2023.

IT IS SO ORDERED.

Dated: April 28, 2023 at Honolulu, Hawai'i.

_____
Derrick K. Watson
Chief United States District Judge

---

*Robert M. Hayslip v. City and County of Honolulu*; Civil No. 22-00410 DKW-WRP; **ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR CONDITIONAL CERTIFICATION OF COLLECTIVE ACTION UNDER THE FLSA**